# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

INTERNATIONAL PAINTERS      \*
AND ALLIED TRADES INDUSTY
PENSION FUND, *et al.*,      \*

     *Plaintiffs*,      \*

v.      \*      Civil Action No. RDB-24-3501

C3 INDUSTRIAL BLASTING      \*
& COATINGS, INC.,
     \*

     *Defendant.*
     \*

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

This case arises under the Employee Income Security Act of 1974 ("ERISA"), codified as amended at 29 U.S.C. §§ 1001 *et seq.*, and concerns claims by various pension funds and annuity plans to "collect unpaid fringe benefits pursuant to ERISA" from Defendant C3 Industrial Blasting & Coatings, Inc. ("C3" or "Defendant"). (ECF No. 24 at 10.) Specifically, on December 3, 2024, Plaintiffs International Painters and Allied Trades Industry Pension Fund; International Painters and Allied Trades Industry Annuity Plan; Daniel Williams, trustee of the Pension Fund and the Annuity Plan; Finishing Trades Institute; IUPAT Industry Pension Plan; Finishing Trades Institute of the International Union of Painters and Allied Trades District Council 77; and Southern Painters Welfare Fund, along with its trustees Bruce Wohl and Paul Canning (collectively, "Plaintiffs"), filed suit in this Court. *See* (ECF No. 1). They allege that C3, a Tennessee corporation with its principal place of business in Knoxville,

Tennessee, failed to meet its obligations under certain labor agreements which required it to make financial contributions to various pension funds and annuity plans. *See* (*id.* ¶¶ 7, 19–27).

Plaintiffs assert that jurisdiction arises under ERISA §§ 502 and 515, 29 U.S.C. §§ 1132 and 1145. (*Id.* ¶ 14.) They further assert that jurisdiction exists in this Court by virtue of the Labor Management Relations Act ("LMRA") § 301, 29 U.S.C. § 185. (*Id.* ¶ 15.) They note that venue is conferred upon this Court pursuant to 29 U.S.C. § 1132, as suit may be brought at their discretion in the district where the plan is administered. (*Id.* ¶ 17.) In that regard, they specifically note that the International Union of Painters and Allied Trades maintains its principal place of business in this District. (*Id.* ¶ 18.)

Now pending is C3's Motion to Transfer Venue pursuant to 28 U.S.C. § 1404(a). (ECF No. 19.) C3 seeks transfer to the United States District Court for the Eastern District of Tennessee. (*Id.*) The parties' submissions have been reviewed; no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons set forth below, C3's Motion to Transfer (ECF No. 19) is GRANTED. This Court TRANSFERS this matter to the United States District Court for the Eastern District of Tennessee.[1]

## BACKGROUND

Defendant C3 Industrial Blasting & Coatings, Inc., is a Tennessee corporation with its principal place of business in Knoxville, Tennessee. (ECF No. 1 ¶ 7.) Plaintiffs are various multiemployer pension funds and their trustees. (*Id.* ¶¶ 1–6.) As relevant to this Motion (ECF No. 19), Plaintiffs allege that C3 was engaged in multiple collective bargaining or other labor

---

[1] C3 specifically seeks a transfer to the Knoxville Division. (ECF No. 19 at 1.) That is a decision left to the Eastern District of Tennessee.

agreements with one or more labor unions or district councils affiliated with the International Union of Painters and Allied Trades, and was therefore subject to ERISA. (*Id.* ¶¶ 19–20.) The Complaint alleges that those bargaining agreements require that C3 "report and pay" to Plaintiffs' pension funds and annuity plans "certain sums of money" determined by the hours worked by C3's employees. (*Id.* ¶ 21.) Plaintiffs contend that reports and contributions must be made in the month following the month in which the hours were worked. (*Id.*) If the reports and contributions are not timely made, they become delinquent. (*Id.* ¶¶ 21–22.) Plaintiffs allege that the collective bargaining or other labor agreements dictate that C3 owes liquidated damages plus interest for each delinquency. (*Id.* ¶ 22.) Finally, the bargaining agreements require that C3 maintain time records and provide them to each pension fund and annuity so that each respective plan can determine whether C3 has accurately and promptly paid all necessary contributions. (*Id.* ¶ 23.)

Plaintiffs allege that they audited C3 for the period of January 1, 2019, through March 31, 2023, and found that C3 had failed to report and pay to multiple pension funds and annuity plans more than $218,389.44 in contributions. (*Id.* ¶¶ 24–25.) They also claim that, as a result of those allegedly unpaid contributions, C3 owes some $30,252.83 in liquidated damages, at least $44,507.93 in interest,[2] and $4,949.98 in auditing costs. (*Id.* ¶¶ 24–25.) Finally, Plaintiffs claim that C3 has "failed to report and pay contributions for hours worked by or paid to its

---

[2] This number represents the total amount that Plaintiffs claim that C3 owes. (ECF No. 1 ¶¶ 24–25.) The Court notes, however, that Plaintiffs break these numbers down into two sets. Specifically, they claim that C3 owes $134,250.55 to one of Plaintiffs' pension plan and $84,138.89 to another. (*Id.* ¶¶ 24–25.) Accordingly, Plaintiffs calculated interest for each separate sum allegedly owed. (*Id.*) For clarity's sake, these numbers are all combined in this Memorandum Opinion.

employees" of various local unions affiliated with Plaintiff District Council 77[3] for various periods between December 2017 and August 2024. Two of the local unions mentioned in the Complaint, Local Union 226 and Local Union 437, are based in eastern Tennessee. *See* (*id.* ¶ 27).

Plaintiffs filed this suit in this Court on December 2, 2024. (ECF No. 1.) C3 filed an Answer on March 7, 2025. (ECF No. 14.) Shortly thereafter, on March 12, 2025, C3 filed the pending Motion to Transfer Venue pursuant to 28 U.S.C. § 1404(a). (ECF No. 19.) C3 seeks transfer to the Eastern District of Tennessee. (*Id.*)

## STANDARD OF REVIEW

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district . . . where it might have been brought." 28 U.S.C. § 1404(a). As Judge Hollander of this Court noted in *International Painters & Allied Trade Industry Pension Fund v. McCormick Painting Co.*, ELH-24-2621, 2025 WL 895391, at *5 (D. Md. Mar. 24, 2025), "§1404(a) 'reflects an increased desire to have federal civil suits tried in the federal system at the place called for in the particular case by considerations of convenience and justice.'" *Id.* (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964)). As the Supreme Court explained in *Van Dusen*, this helps "to prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" 376 U.S. at 616 (citation omitted); *see also Int'l*

---

[3] Based one of the collective bargaining agreements in the record, the Court notes that District Council 77 of the International Union of Painters and Allied Trades covers Alabama, Eastern Tennessee, Georgia, North Carolina, and South Carolina. *See* (ECF No. 19-3 at 5).

*Painters & Allied Trade Indus. Pension Fund v. Marrero Glass & Metal Inc.*, ELH-18-0452, 2019 WL 423409, at *2 (D. Md. Feb. 1, 2019).

The movant bears the burden of showing that transfer to another venue is proper. *Versus Evil LLC v. PNC Bank, N.A.*, 613 F. Supp. 3d 916, 921 (D. Md. 2020) (internal citation omitted). A district court has broad discretion in determining whether a transfer pursuant to § 1404(a) is proper. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). That determination is made according to an "individualized, case-by-case consideration of convenience and fairness." *Id.*

## ANALYSIS

C3 petitions this Court to transfer this case to the United States District Court for the Eastern District of Tennessee. (ECF No. 19-1 at 1.) This case could originally have been filed in that court. Additionally, the relevant factors weigh in favor of a transfer. Thus, C3's Motion to Transfer (ECF No. 19) will be GRANTED.[4]

As a preliminary issue, § 1404(a) requires that the transferee court be one where the case could originally have been brought. To make that showing, venue in the transferee court must be proper, and that court must have personal jurisdiction over the defendant. *See Int'l Painters & Allied Trade Indus. Pension Fund v. Miller Painting Co.*, ELH-24-3441, 2025 WL 1382900, at *5 (D. Md. May 13, 2025). With respect to venue, an ERISA case "may be brought in the district where the plan is administered, where the [alleged] breach took place, or where

---

[4] Judge Hollander of this Court has recently issued two decisions regarding the propriety of transferring other ERISA cases brought by Plaintiffs in this Court and which involve allegations of quite similar conduct. *See McCormick Painting Co.*, 2025 WL 895391, at *11; *Int'l Painters & Allied Trade Indus. Pension Fund v. Miller Painting Co.*, ELH-24-3441, 2025 WL 1382900, at *5 (D. Md. May 13, 2025) (hereinafter "*Miller*"). This Court incorporates the legal standard set forth in those decisions.

a defendant resides or may be found." 29 U.S.C. § 1132(e)(2). C3 admits that it is incorporated and has its principal place of business in Tennessee, making venue proper in that court. For the same reason, that court would also have personal jurisdiction over C3. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) ("With respect to a corporation, the place of incorporation and principal place of business are 'paradig[m] ... bases for general jurisdiction.'" (alterations in original) (internal citation omitted)).

Given that Plaintiffs could have brought this case in the Eastern District of Tennessee, the Court considers the following factors: "(1) the weight accorded to the plaintiff's choice of venue; (2) the convenience of the witnesses; (3) the convenience of the parties; and (4) the interest of justice." *Miller*, 2025 WL 1382900, at *11 (citing *Tr. of the Plumbers and Pipefitters Nat. Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 444 (4th Cir. 2015)). Another relevant factor is "the 'local interest in having localized controversies settled at home.'" *Id.* at *5 (quoting *Stratagene v. Parsons Behle & Latimer*, 315 F. Supp. 2d 765, 771 (D. Md. 2004)). As noted above, the decision to transfer a case is "committed to the sound discretion of the trial court." *Mamani v. Bustamante*, 547 F. Supp. 2d 465, 469 (D. Md. 2008).

### 1. Plaintiffs' Choice of Venue

"As a general rule, a plaintiff's 'choice of venue is entitled to substantial weight in determining whether transfer is appropriate.'" *Plumbing Servs., Inc.*, 791 F.3d at 444 (quoting *Bd. of Trs. v. Sullivant Ave. Props., LLC*, 508 F. Supp. 2d 473, 477 (E.D. Va. 1988)). This is particularly true where "'the chosen forum is the plaintiff's home or bears a substantial relation to the cause of action.'" *Miller*, 2025 WL 1382900, at *11 (quoting *comScore, Inc. v. Integral Ad Science, Inc.*, 924 F. Supp. 2d 677, 682 (E.D. Va. 2013)). However, the plaintiff's choice is

accorded significantly less weight "'when none of the conduct complained of occurred in the forum selected by the plaintiff and said forum has no connection with the matter in controversy.'" *Id.* (quoting *Lynch v. Vanderhoef Builders*, 237 F. Supp. 2d 615, 617 (D. Md. 2002)).[5] In an ERISA case, a plaintiff's choice of forum is accorded "'somewhat greater weight.'" *Plumbing Servs.*, 791 F.3d at 444 (quoting *Cross v. Fleet Reserve Ass'n Pension Plan*, 383 F. Supp. 2d 852, 856–57 (D. Md. 2005)).

C3 argues that Plaintiffs' choice to litigate in this Court should not be afforded much weight because "the only connection with [Maryland] in the present case is that the Funds are alleged to be administered [here]." (ECF No. 19-1 at 5.) C3 also notes that the allegedly unpaid contributions central to this case derive from work performed in or around Knoxville, pursuant to collective bargaining agreements that it entered with east Tennessee-based local affiliates of the International Union of Painters and Allied Trades. (*Id.*)

In Response, Plaintiffs rely on what they term ERISA's "national venue provision," which permits them to sue "in any jurisdiction, regardless of where the defendant is located." (ECF No. 24 at 16.) Of note, Plaintiffs cite *International Painters & Allied Trade Industry Pension Fund v. Marrero Glass & Metal Inc.*, ELH-18-452, 2019 WL 423409 (D. Md. Feb. 1, 2019), to support their argument in opposition to transfer. (ECF No. 24 at 18–20.) In that case, another ERISA action filed by Plaintiffs in this Court, Judge Hollander granted the defendant's motion

---

[5] This finding is consistent across district courts within this Circuit, including in other ERISA cases. *See, e.g.*, *Bannister v. Wal-Mart Stores E., L.P.*, 843 F. Supp. 2d 610, 615 (E.D.N.C. 2012) ("[T]he deference given to a plaintiff's choice of forum is proportionate to the relationship between the forum and the cause of action."); *Mamani*, 547 F. Supp. 2d at 473 ("[A] court need not accord the choice as much weight when the 'forum has no connection with the matter in controversy.'") (citation omitted); *Bd. of Trs.*, 508 F. Supp. 2d at 477 (observing that the weight of plaintiff's choice of forum "varies depending on the significance of the contacts between the venue chosen by Plaintiff and the underlying cause of action").

7

to transfer to the Eastern District of Pennsylvania. *Id.* at \*6. As to this factor, Judge Hollander found that "Marlyand ha[d] little connection the merits of the underlying dispute." *Id.* at \*4. Although the pension funds in that case—which are the same as the funds in this case—were administered in Hanover, Maryland, "the disputed conduct, or lack thereof, . . . occurred in Pennsylvania." *Id.* Accordingly, Judge Hollander concluded that the plaintiffs' choice of forum was "'significantly lessened.'" *Id.* (quoting *Lynch*, 237 F. Supp. 2d at 617).

That analysis is directly applicable to this case. Although Plaintiffs allege that they administer the pension fund in Hanover, Maryland, all of putative conduct giving rise to this case occurred in or around Knoxville, Tennessee. Said differently, if C3 was delinquent in its contributions to Plaintiffs' pension funds and annuity plans, it was delinquent in Tennessee.[6] Maryland has little connection to this dispute. Accordingly, Plaintiffs' choice of forum in Maryland is significantly lessened, and this factor weighs in favor of transfer.

### 2. Convenience of Witnesses

"Perhaps the most important factor to be considered by a court in passing on a motion to transfer is the convenience of the witnesses." *Cronos Containers, Ltd. v. Amazon Lines, Ltd.*, 121 F. Supp. 2d 461, 466 (D. Md. 2000); *accord Mamani*, 547 F. Supp. 2d at 473; *McCormick*, 2025 WL 895391, at \*13; *Miller*, 2025 WL 1382900, at \*13. However, "the convenience of witnesses who are employees of a party is entitled to less weight because that party can obtain

---

[6] To rebut this point, Plaintiffs cite *McQuennie v. Carpenters Local Union 429*, No. 15-cv-00432, 2015 WL 6872444, at \*2 (D.Conn. Nov. 9, 2015), and argue that any harm that occurred here occurred in Maryland. (ECF No. 24 at 24.) Plaintiffs raised this same argument, and again cited *McQueenie*, in *Miller*. *See* 2025 WL 1382900, at \*7. As Judge Hollander noted in that case, the citation to *McQueenie* is "misleading" because *McQueenie* involved a beneficiary of a pension fund suing *his own* pension for allegedly denying him *his own* pension benefits. *Id.* (citing *McQueenie*, 2015 WL 6872444, at \*2). That citation, therefore, is inapposite. As *Miller* makes clear, the alleged breach in this case occurred (or did not) where C3 allegedly failed to make its contributions to Plaintiffs: Tennessee. *See id.*

their presence at trial." 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Fed. Prac. & Proc. Civ. § 3581 at 278 (4th ed. 2018).

C3 notes that potential party and nonparty witnesses are already located in eastern Tennessee, making travel to the transferee court far more convenient than to Baltimore. (ECF No. 19-1 at 7.) In Response, Plaintiffs claim that their potential auditor witnesses are located in "New York, Washington, D.C., Boston, Pennsylvania, and Connecticut." (ECF No. 24 at 25.) Plaintiffs also point to potential witnesses from District Council 77, which is based in Decatur, Georgia. (*Id.* at 26.) They assert that "[a] plane ride from these areas to Maryland compared to Knoxville is difficult to distinguish in terms of viability, cost[,] or duration." (*Id.*) The Court notes that Decatur is some 220 miles from Knoxville, and more than 670 miles from Baltimore. The distances are, in fact, distinguishable.

Finally, Plaintiffs attempt to argue that this factor weighs in their favor because "[C3] has not claimed that any non-party witnesses would be unavailable, only that it would be easier for such witnesses to travel to Tennessee." This argument misunderstands the point of this second factor, which most courts title "the convenience of the witnesses." *See, e.g., Mamani*, 547 F. Supp. 2d at 473; *Miller*, 2025 WL 1382900, at *13. It is not a movant's obligation to show that witnesses would be unavailable in a plaintiff's chosen forum. Instead, this factor weighs in favor of transfer when, on the whole, the transferee court would be more convenient to the witnesses than the plaintiff's chosen forum. In this case, neither party refers to any witness located in Maryland. To the contrary, the Eastern District of Tennessee would likely be more convenient for any witnesses of District Council 77 (located in Decatur, Georgia), Local Union 226 and Local Union 437 (located in east Tennessee), as well as witnesses of C3.

This is particularly true of non-party witnesses central to this case, former employees of C3, discussed further *infra*. In sum, this factor weighs in favor of transfer.

### 3. Convenience of the Parties

"A defendant moving for transfer must show both that the original forum is inconvenient for it and that the plaintiff would not be substantially inconvenienced by a transfer." Wright, Miller & Kane, *supra*, § 3849 at 217. Notably, "transfer will be refused if the effect of a change of venue would be merely to shift the inconvenience from one party to the other." *Id.* at 216.

C3 argues that litigating in this Court would be inconvenient for it and notes that it is at home in its Knoxville headquarters, which is in the Eastern District of Tennessee. (ECF No. 19-1 at 6–7.) It claims that it has "no ties to Maryland, no offices there, and conducts no business in Maryland." (*Id.* at 8.) Further, C3 notes that much of the relevant documentary evidence is located in that district. (*Id.* at 7.) It claims that all relevant financial records are located in Knoxville. (*Id.*) Next, Defendant points out that if "any extrinsic evidence of intent is admissible to construe ambiguous . . . terms" in any collective bargaining agreement, such evidence would be located at Local Unions near Knoxville and with C3's principals, "who are all in Tennessee." (*Id.* at 8.) Relatedly, C3 states that depositions would be more conveniently held in the Eastern District of Tennessee than in Baltimore. (*Id.* at 7.)

C3 also notes that some of Plaintiffs (specifically, Southern Painters Welfare Fund and Finishing Trades Institute) are located in Goodlettsville, Tennessee, which is over 700 miles from Baltimore and less than 200 miles from Knoxville. (*Id.* at 8.) Additionally, as noted above, the record indicates that representatives of Local Union 226 and Local Union 437 would be

in east Tennessee. District Council 77 is based in Decatur, Georgia, significantly closer to Knoxville than Baltimore. Finally, C3 notes that Plaintiffs' counsel are located in California and Pittsburgh, meaning that the transferee court would not be more inconvenient than this Court. (*Id.*)

In Response, Plaintiffs argue that transferring this case would merely shift the inconvenience from C3 to them. (ECF No. 24 at 26.) Plaintiffs assert that all but one of the relevant pension funds and annuity plans are "at home" in either Maryland or Georgia, and that transferring the case "only shifts the travel obligations from Defendant to Plaintiffs." (*Id.* at 27.) Plaintiffs also note that "cases are not litigated in the Stone Age" and that the auditing done in this case was conducted remotely.

In Reply, C3 points out that the transferee court is more convenient for this litigation because two of the employees primarily responsible for C3's reporting at issue in this case are no longer employees of Defendant and would likely resist being deposed. (ECF No. 25 at 8.) This likelihood would decrease, Defendant argues, if the case were transferred. (*Id.*)

While Maryland provides Plaintiffs with the convenience of litigating the case where the relevant funds are administered, Tennessee is convenient for C3, some Plaintiffs, and some key witnesses. Given those considerations as well as the inherent value in litigating a case where the conduct is alleged to have occurred, this factor weighs in favor of transfer.

### 4. Interest of Justice

The final factor a court considers is whether transfer is in the interest of justice. This factor is "amorphous and somewhat subjective," and allows a court to "consider many things." Wright, Miller & Kane, *supra*, § 3854 at 313, 318. This Court "may appropriately

consider the 'conservation of judicial resources and comprehensive disposition of litigation." *Cronos Containers*, 121 F. Supp. 2d at 466. The Court may also consider "the 'local interest in having localized controversies settled at home.'" *Miller*, 2025 WL 1382900, at \*5 (quoting *Stratagene v. Parsons Behle & Latimer*, 315 F. Supp. 2d 765, 771 (D. Md. 2004)). Put simply, the core allegation in this case is that C3, a company based in the Eastern District of Tennessee, failed to pay adequate pension and annuity fund contributions for work performed in or around Knoxville. The work in question was performed, at least in part, by Local Unions based in east Tennessee. As C3 argues, the documentary records and some central witnesses are likely to be located in east Tennessee. This fourth and final factor thus weighs in favor of a transfer.

In sum, each of these four factors weighs in favor of this case being transferred to the United States District Court for the Eastern District of Tennessee. The Court notes, as it did above, that the ultimate decision to transfer a case, even in an ERISA action, is "committed to the sound discretion of the trial court." *Mamani*, 547 F. Supp. 2d at 469. Having conducted an "individualized, case-by-case consideration of convenience and fairness," *Stewart*, 487 U.S. at 29, this Court concludes that this case is best litigated in the Eastern District of Tennessee. Accordingly, the Court will GRANT C3's Motion to Transfer (ECF No. 19).

## CONCLUSION

For the reasons stated above, C3's Motion to Transfer (ECF No. 19) is GRANTED. This Court TRANSFERS this case to the United States District Court for the Eastern District of Tennessee.

A separate Order follows.

Date: May 14, 2026

_____/s/_____

Richard D. Bennett
United States Senior District Judge